RECEIVED

AUG 2 5 2017

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AT 8:30_____M
WILLIAM T. WALSH
CLERK

TAYLOR M. BALLARD,

      Plaintiff,

      v.

AT&T MOBILITY, INC., et al.,

      Defendants.

Civil Action No. 15-8808 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendants AT&T Mobility Services, LLC[1] ("AT&T") and AT&T Corp.'s (collectively, "Defendants") Renewed Motion for Summary Judgment. (ECF No. 23.) Plaintiff Taylor M. Ballard ("Plaintiff") filed opposition (ECF No. 25), and Defendants replied (ECF No. 28). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Renewed Motion for Summary Judgment is GRANTED.

---

[1] Defendants note that Plaintiff incorrectly pled AT&T Mobility Services, LLC as AT&T Mobility, Inc. (Defs.' Statement of Undisputed Material Facts ("SUMF") 1, ECF No. 23-1.)

## I.  Background

### A.  Undisputed Facts[2]

#### 1.  AT&T Employs Plaintiff at Freehold Raceway Mall

"AT&T Corp. has never hired or had any direct contractual relationship with [Plaintiff]."[3] (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 4, ECF No. 23-1.) "AT&T Mobility, a subsidiary of AT&T Corp., is a provider of advanced mobile services, next generation television, high-speed Internet, and other technological solutions for individuals and businesses."[4] (*Id.* ¶ 1.) "In addition to its online business, AT&T Mobility operates through physical store locations

---

[2] Local Civil Rule 56.1(a) permits a nonmoving party on summary judgment to provide "a supplemental statement of *disputed* material facts." (Emphasis added). Here, in addition to a responsive statement of disputed facts, Plaintiff has filed a Counter-Statement of Facts ("CSF"). (ECF No. 25.) In deciding this Motion, the Court adopts the approach taken in *Mehr v. Atlantic City*:

> [T]he Local Rules do not contemplate a nonmoving party furnishing its own statement of undisputed material facts. Indeed, aside from not being contemplated by the local civil rules, such a document is not necessary to defeat summary judgment, as Plaintiff[] must only show that some material fact is in dispute, and need not affirmatively prove [her] case at this point. However, as Defendants have fully responded to this "Counterstatement," and the Counterstatement . . . cites to portions of the record, the Court sees no reason not to rely on the contents therein.

No. 12-4499, 2014 WL 4350546, at *3 n.3 (D.N.J. Sept. 2, 2014).

[3] Plaintiff admits, stating that: "[she] was an employee and is not believed to have had a written contract [with AT&T]." (Pl.'s Resp. to Defs.' SUMF ¶ 4, ECF No. 25.) The Court deems Defendants' SUMF ¶ 4 undisputed under Local Civil Rule 56.1(a).

[4] For efficiency, the Court omits separate citations to Plaintiff's admissions to Defendants' SUMF (Pl.'s Resp. to Defs.' SUMF) where Plaintiff plainly "admitted" without further elaboration. Similarly, the Court omits citations to Defendants' Response to Plaintiff's CSF (Defs.' Resp. to Pl.'s CSF, ECF No. 28-1) where Defendants admit to Plaintiff's allegation. Further, the Court omits duplicative citation to both parties' statements of facts where the parties allege identical facts.

throughout the country, including the Freehold Raceway Mall, [located] in Freehold, New Jersey."
(*Id.* ¶ 2.) "In November 2013, AT&T Mobility hired Plaintiff . . . to work as a Retail Sales
Consultant ('RSC') at [the] store [in] the Freehold Raceway Mall." (*Id.* ¶ 3.) "As an RSC,
[Plaintiff] was responsible for acquainting customers with the technology sold at the store,
educat[ing] customers about these products and services, and ultimately sell[ing] a certain amount
of AT&T products." (*Id.* ¶ 6.) At the time, William Cortes was the store manager (the "Manager"),
while Alcadio Ortiz was an assistant manager (the "Assistant Manager") (collectively,
"management"). (Defs.' SUMF ¶ 5; Defs.' Resp. to Pl.'s CSF ¶ 2, ECF No. 28-1.)

## 2. AT&T's Policies and Training[5]

"AT&T maintains a Code of Business Conduct [('Code')], by which all employees are
required to abide."[6] (Defs.' SUMF ¶ 7.) AT&T's Code "requires that employees 'treat each other
with respect and do[es] not permit intimidation, discrimination, or harassment in the workplace.'"
(*Id.* ¶ 8.) The Code states, in relevant part:

> When the actions of some cause others to feel intimidated, offended,
> or to lose dignity, all of us suffer. We must treat each other
> courteously and professionally. We insist on a positive work
> environment and speak out if that goal is compromised by anyone.
> Discrimination and all unlawful harassment (including sexual
> harassment) in employment is not tolerated. We encourage success

---

[5] It appears to the Court that some of Plaintiff's responses do not match up with Defendants'
SUMF. The Court, therefore, has attempted to construe Plaintiff's responses as accurately as
possible based on its review of the record, and cites to Plaintiff's responses by referring to the
paragraph number to which each response appears to be directed (as opposed to the paragraph
numbers actually indicated on Plaintiff's responses).

[6] Plaintiff admits this was the company policy, but denies that "[Defendants'] conduct, procedures,
manner of discipline, and documentation reflect these stated policies." (Pl.'s Resp. to Defs.' SUMF
¶ 7.) The Court, therefore, deems Defendants' SUMF ¶ 7 undisputed under Local Civil Rule
56.1(a). *See Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308, 2016 WL 4571388, at *1 n.1
(D.N.J. Sept. 1, 2016) (finding that where responsive statements "add additional facts but do not
contest the asserted proposition, or assert arguments and legal analysis, not facts," allegations are
deemed undisputed).

3

based on our individual merits and abilities without regard to race, color, religion, national origin, gender, sexual orientation, gender identity, age, disability, marital status, citizenship status, military status, or veteran status. We support and obey laws that prohibit discrimination everywhere we do business.

(*Id.*) Moreover, AT&T's "employees are advised of their rights and responsibilities in both abiding by the Code and reporting any violation of the Code[,] and employees are provided multiple avenues in which to report any conduct that violates AT&T's . . . policies, including the opportunity to report a violation anonymously." (*Id.* ¶ 9.) The Code states, in relevant part:

> We know our reporting rights and responsibilities. We report when we observe a violation, or what reasonably appears to be a violation, of the law, this Code, or Company policies and guidelines. We use these reporting rights responsibly, without intending to harass others or to report trivial matters. We do not knowingly and willfully make false, fictitious statements or representations. We can raise questions or concerns or make a report to our supervisors, any manager, Human Resources, Corporate Compliance, Asset Protection, Corporate Ethics, or the Legal Department. If reporting to our supervisors or the resources above is uncomfortable, those of us in the U.S. can report to the AT&T Hotline, 1-888-871-2622. This Hotline is for reporting suspected or actual violations of AT&T's Code or other company policies. In addition to the Hotline, those in the U.S. may report HR related matters such as [Equal Employment Opportunity ("EEO")], discrimination, and employee relations issues via the AT&T Web Reporting Site (https://wwwtnwgrc.com/att/). Both the Hotline and the Web Reporting Site provide a confidential and anonymous process for reporting. Our employees outside the U.S. may contact Human Resources or Asset Protection representatives directly, as appropriate.

(*Id.*) As with all of AT&T's employees, Plaintiff received training on the Code.[7] (*Id.* ¶ 10.) In addition to its general Code, "AT&T maintains a separate Equal Employment Opportunity . . . and Harassment Policy." (*Id.* ¶ 11.) The policy states:

---

[7] Plaintiff's response to Defendants' SUMF states: "Denied as stated." (Pl.'s Resp. to Defs.' SUMF ¶ 10.) Plaintiff's blanket denial without any citation to the record is contrary to the record. Indeed,

4

> AT&T also strictly prohibits all forms of workplace harassment,
> including sexual and racial harassment and harassment based on any
> of the protected characteristics described above (race, color,
> religion, national origin, age, sex, sexual orientation, gender
> identity, disability, pregnancy, genetic information, marital status,
> citizenship status, military status, veteran status, or any other
> characteristics protected by federal, state, or local law). An
> employee's actions, words, or behavior must not create an
> intimidating, hostile, or offensive environment. Employees are not
> permitted to ridicule, intimidate, threaten, demean, or bully other
> employees, customers, vendor employees, or any other individuals
> with whom they interact. Remarks, comments, jokes, slurs, images,
> or gestures of an offensive nature will not be tolerated.[8]

(*Id.*) AT&T requires that employees "report a violation of the EEO and Harassment Policies to a

supervisor, . . . manager, Human Resources, directly to the AT&T Hotline . . . or the AT&T Hotline

Web Reporting site."[9] (*Id.* ¶ 12.) Moreover, AT&T maintains a non-retaliation policy, which

states:

> Any individual who suspects an EEO violation and makes a report
> is acting responsibly in accordance with the EEO and Harassment
> Policies. [AT&T] forbids retaliation against any person who makes
> a report or who participates in the investigative process. Allegations
> of retaliation will be investigated and appropriate action will be
> taken. Any individual engaged in retaliatory behavior will be subject
> to disciplinary action, which may include termination of

---

Plaintiff admits to being trained on the Code. (Petrella Decl., Ex. 1 ("Pl.'s Dep.") 126:8-16, ECF No. 23-6.) The Court, therefore, deems Defendants' SUMF ¶ 10 undisputed.

[8] Plaintiff responds: "Yes, the document states that but again it was routinely violated. Thus, talk about women's sexual features, bagging women including customers, were acts that flagrantly violated the AT&T code, but were repeatedly allowed by AT&T management. Indeed, where a complaint was made about such conduct, it would be the victim who was facing close scrutiny and documentation of her activities." (Pl.'s Resp. to Defs.' SUMF ¶ 11.) As Plaintiff does not dispute the content of the policy, the Court deems Defendants' SUMF ¶ 11 undisputed.

[9] Plaintiff responds: "[a]gain, violation of the stated policies was the norm, and those who did violate the policies . . . would have their conduct defended." (Pl.'s Resp. to Defs.' SUMF ¶ 12.) As Plaintiff does not dispute the content of the policy, the Court deems Defendants' SUMF ¶ 12 undisputed.

employment. For any suspected retaliation concerns, contact the
AT&T Hotline immediately.[10]

(*Id.* ¶ 13.) Plaintiff "also received training on the EEO and Harassment Policy." (*Id.* ¶ 14.)[11]

### 3. Plaintiff's Attendance and Job Performance

As an RSC, Plaintiff "was expected to maintain a minimum number of monthly sales and
to improve the customers' experience in the store."[12] (Defs.' SUMF ¶ 15.) "At the beginning of
[Plaintiff's] employment, [she] was given training[13] on the techniques that AT&T employs to
ensure customer satisfaction and employee success. [Plaintiff] was also provided ongoing training
and assistance during work from more experienced sales staff and management." (*Id.* ¶ 16.)

---

[10] Plaintiff responds: "While the policy states this, it was routinely violated. When [Plaintiff]
presented her complaint to [the Assistant Manager] and [the Manager], each took no disciplinary
action against the offender, accepted or justified the offender's conduct, and repeatedly suggested
she quit." (Pl.'s Resp. to Defs.' SUMF ¶ 13.) As Plaintiff does not dispute the content of the policy,
the Court deems Defendants' SUMF ¶ 13 undisputed. *See Barker*, 2016 WL 4571388, at *1 n.1
(where responsive statements "add additional facts but do not contest the asserted proposition, or
assert arguments and legal analysis, not facts," allegations deemed undisputed).

[11] Plaintiff "acknowledged receiving the materials, but again found that what was stated in those
materials did [not] reflect the reality of company policies, at least as implemented at [Plaintiff's]
store." (Pl.'s Resp. to Defs.' SUMF ¶ 14.) As Plaintiff does not dispute the alleged fact, the Court
deems Defendants' SUMF ¶ 14 undisputed.

[12] Plaintiff responds: "[T]here were general sales goals but not requirements. Further, [Plaintiff]
state[s] that adherence to them only became a serious concern after she made her first sexual
harassment complaint to [the Assistant Manager]." (Pl.'s Resp. to Defs.' SUMF ¶ 15.) Plaintiff
fails to provide a citation to the record in support of this contention. The record, however, states
that Plaintiff was "required to maintain minimum sales results in a number of categories according
to the Monthly Action Plan goals set in the beginning of the month. In addition [Plaintiff was]
required to execute all the elements of the Retail Sales Experience in order to achieve those
targets." (Johannessen Decl., Ex. D, at ATT0061, ECF No. 23-4.) The Court, therefore, deems
Defendants' SUMF ¶ 15 undisputed.

[13] Defendants' SUMF ¶ 16 states that Plaintiff "was given extensive training." Plaintiff's response
states: "The term extensive is denied." (Pl.'s Resp. to Defs.' SUMF ¶ 16.) Because this fact is
immaterial to the present Motion, the Court omits the term "extensive," and otherwise deems
Defendants' SUMF ¶ 16 as undisputed.

Despite coaching and instruction, Plaintiff "failed to meet AT&T's expectations with respect to work performance."[14] (*Id.* ¶ 17.) As a result, on April 21, 2014, "the management team at the Freehold [Raceway Mall] store formalized its numerous discussions with [Plaintiff] regarding her performance failures in a 'Counseling Plan' memorandum [(the 'Counseling Plan')]." (*Id.* ¶ 18.)

The Counseling Plan explained "a number of the performance issues [Plaintiff] was having," and listed specific documented examples.[15] (*Id.*) For example, "on March 15, 2014, [Plaintiff] was 'observed not exchanging names with [a] customer during [a] greet. [Plaintiff] also failed to build value or mention any of [AT&T's] strategic products such as WHP, Digital Life, and MIFI.'"[16] (*Id.* ¶ 19.) Additionally, on March 23, 2014, "[a]n observation was performed on

---

[14] Plaintiff concedes that "there were small issues of performance," but further elaborates that "these only [became] a significant concern after the managers became angry at her complaints." (Pl.'s Resp. to Defs.' SUMF ¶ 17.) Plaintiff fails to cite any affidavits or other documents in support of her dispute as required under Local Civil Rule 56.1(a). In contrast, the record demonstrates that AT&T management documented these performance issues on multiple occasions prior to Plaintiff's first alleged complaint to the Assistant Manager in April 2014, or her documented complaint to the Manager on May 2, 2014. (Johannessen Decl., Ex. D at ATT0060.) The Court, therefore, deems Defendants' SUMF ¶ 17 undisputed.

[15] Plaintiff's response states: "The detailed supervision and documentation of even small deviations occurred after her sexual harassment complaint. It can be contrasted with the company's lack of concern over far larger and blatant violations of its sexual harassment policy." (Pl.'s Resp. to Defs.' SUMF ¶ 18.) Plaintiff fails to cite any affidavits or other documents in support of her dispute as required under Local Civil Rule 56.1(a). In contrast, the record demonstrates that AT&T management documented these performance issues on multiple occasions prior to Plaintiff's alleged first complaint to the Assistant Manager in April 2014. (Johannessen Decl., Ex. D at ATT0060.) Management observed violations on March 15, March 21, March 23, and March 28, 2014, as well as met with Plaintiff to review her performance and sales results on March 5, March 17, and March 31, 2014. (*Id.*) The Court, therefore, deems Defendants' SUMF ¶ 18 undisputed.

[16] Plaintiff's response states: "Acknowledged that was stated but see [Plaintiff's Response to Defendants' SUMF ¶ 18]." (Pl.'s Resp. to Defs.' SUMF ¶ 19.) Because Plaintiff's Response to Defendants' SUMF ¶ 18 fails to cite any supporting evidence in the record as required under Local Civil Rule 56.1(a), and appears to be contrary to the evidence, the Court deems Defendants' SUMF ¶ 19 undisputed.

[Plaintiff], resulting in the fact that [she] failed to mention WHP or Digital Life. Following the sale, [management and Plaintiff] reviewed the customer interaction and spoke about key misses during the [i]nteraction." (*Id.* ¶ 20.) The Counseling Plan continued:

> [Plaintiff is] required to maintain minimum sales results in a number of categories according to the Monthly Action Plan goals set in the beginning of the month. In addition, [Plaintiff is] required to execute on all of the elements of the Retail Sales Experience in order to achieve those targets. [Plaintiff has] not demonstrated adequate improvement in this area. [Plaintiff has] not met the expectation with regard to this aspect of [her] position. The company has reached a decision in the matter and [Plaintiff] will be placed on a Counseling Notice.[17]

(*Id.* ¶ 21.) The Counseling Plan "set[] forth a specific plan for [Plaintiff] to follow in an attempt to improve her performance[,] and set[] a three-month period for [Plaintiff] to attempt improvement."[18] (*Id.* ¶ 22.) In a six-month period, from the time that Plaintiff began work in November 2013 through May 1, 2014, Plaintiff was documented as tardy for work on seven separate occasions and once for an unexcused absence.[19] (*Id.* ¶¶ 24-25.)

---

[17] Plaintiff's response to Defendants' SUMF ¶ 20 and ¶ 21 states: "Plaintiff acknowledged that document was sent but incorporated [her] response [in Pl.'s Resp. to Defs.' SUMF ¶ 17 and ¶ 18]." Because Plaintiff's Responses to Defendants' SUMF ¶ 17 and ¶ 18 fail to cite any supporting evidence in the record as required under Local Civil Rule 56.1(a), and is contrary to the evidence in the record, the Court deems Defendants' SUMF ¶ 20 and ¶ 21 undisputed.

[18] Plaintiff fails to respond to Defendants' SUMF ¶ 22. The Court, therefore, deems Defendants' SUMF ¶ 22 undisputed. *Dale Grp. v. HCC Sur. Grp.*, No. 12-492, 2015 WL 1292510, at *1 n.2 (D.N.J. Mar. 20, 2015) (holding that facts set forth in movants' 56.1 statement "are undisputed and accepted as true for purposes of this summary judgment motion" for failure of non-moving party to comply with Rule "because it does not responsively address the paragraphs set forth" within the movants' statement).

[19] The documented instances of tardiness and the unexcused absence are as follows: (11/19/2013) one hour and forty-five minutes late; (12/09/2013) seven minutes late; (1/24/2014) one hour and ten minutes late; (2/08/2014) six minutes late; (2/11/2014) forty-nine minutes late; (3/01/2014) unexcused absence; (4/26/2014) twenty-two minutes late; (5/01/2014) nineteen minutes late. Additionally, Plaintiff's response to Defendants' SUMF ¶ 24 and ¶ 25 is: "AT&T states its documents show the stated attendance." (Pl.'s Resp. to Defs.' SUMF ¶¶ 24-25.) Plaintiff

Plaintiff's Complaint of Harassment to Management

Richard Arruda ("Arruda") was hired and began work at the AT&T store in Freehold Raceway Mall on April 7, 2014. (Defs.' SUMF ¶ 27.) According to a subsequent complaint by Plaintiff, "Arruda made some comments to [Plaintiff] about her appearance."[20] (*Id.* ¶ 28.) As a result, on May 2, 2014, Plaintiff "approached her immediate supervisor, [the Manager], and reported an incident involving Arruda." (*Id.* ¶ 29.) Plaintiff complained that "Arruda made some comments about the size and heaviness of [Plaintiff's] breasts." (*Id.*) Plaintiff also "complained that . . . Arruda took unsolicited photo[graphs] of her using 'Google Glasses.'" (*Id.*) Plaintiff complained that she was dressed in her work uniform at the time of the photographs.[21] (*Id.*) In

---

does not deny that AT&T's SUMF ¶ 24 and ¶ 25 are true. (*Id.*) Moreover, Plaintiff does not identify any material fact in dispute, and fails to cite any affidavits or other documents as required under Local Civil Rule 56.1(a). The Court, therefore, deems Defendants' SUMF ¶ 24 and ¶ 25 undisputed.

[20] Plaintiff's response to Defendants' SUMF ¶ 28 is: "Part of the description is correct, but some attempts to lessen the severity of what was said and done." (Pl.'s Resp. to Defs.' SUMF ¶ 28.) Plaintiff does not identify any material facts she disputes, and fails to cite any affidavits or other documents in support of her dispute as required under Local Civil Rule 56.1(a). The Court, therefore, deems Defendants' SUMF ¶ 28 undisputed.

[21] Plaintiff's response to Defendants' SUMF ¶ 29 is: "Without any investigation or speaking with witness [sic], [Manager] almost immediately determined that Arruda's version of the facts in which where [sic] [Plaintiff] solicited [Arruda] to take her picture and discuss the alleged unequal size of her breasts was more credible. This version became AT&T's position . . . ." (Pl.'s Resp. to Defs.' SUMF ¶ 29.) Plaintiff does not deny that Defendants' SUMF ¶ 29 is true. The Court, therefore, deems Defendants' SUMF ¶ 29 undisputed. *See Barker*, 2016 WL 4571388, at *1 n.1 (finding that where responsive statements "add additional facts but do not contest the asserted proposition, or assert arguments and legal analysis, not facts," allegations deemed undisputed).

addition, Plaintiff complained that, while she was taking a break, Arruda "lifted his arm to show

her the pornography that he was already playing." (Pl.'s CSF ¶ 20, ECF No. 25.)

In response, the Manager "documented [Plaintiff's] complaint in AT&T's Personnel

Development Tracking System ("PDTS") [22]:

> Today [Plaintiff and the Manager] had a discussion regarding
> [Arruda] who [Plaintiff] currently work[s] with at Freehold
> Raceway [M]all. [Plaintiff] stated that [Arruda] has made some
> inappropriate comments towards [her] and that [she] feel[s]
> uncomfortable. [The Manager] asked [Plaintiff] what [Arruda]
> stated and [Plaintiff] said [Arruda] referenced [her] woman parts
> during a conversation and that [Arruda] has conversations with
> someone on the phone referencing [her]. [Plaintiff] also stated
> [Arruda] has pictures of [her] on his personal phone and he showed
> them to [her]. [Plaintiff] lastly stated that [she has] witnessed him
> watching inappropriate things on his watch on the sales floor.
> [Plaintiff and the Manager] also discussed inappropriate comments
> [that Plaintiff has] made in the back room and pictures [she has]
> taken of other employees. [The Manager] explained to [Plaintiff]
> that [he] will speak to [Arruda] regarding the situation and [asked if
> Plaintiff] wanted to witness the conversation. [Plaintiff] stated [that
> she did not] want to be in the room. [The Manager] told [Plaintiff
> that he] would give [her] a quick [review] of the [conversation] and
> ensure everyone is aware that harassment is a serious and terminable
> offense.[23]

(*Id.* ¶ 30.) The day after Plaintiff's May 2, 2014 complaint, the Manager spoke to Arruda about

the incident. (*Id.* ¶ 32.) Plaintiff "walked in on [this] conversation . . . but did not hear anything of

---

[22] AT&T's PDTS is a "management tool used to track human resources complaints and
performance issues contemporaneously." (Defs.' SUMF ¶ 30.)

[23] Plaintiff's response to Defendants' SUMF ¶ 30 is: "The document is believed to state this, but
has multiple misleading or incorrect statements. For example, it is stated that harassment is a
serious and terminable offense. There is no indication of any appreciation of the seriousness of
such conduct in [AT&T's] actions." (Pl.'s Resp. to Defs.' SUMF ¶ 30.) Plaintiff does not identify
any material facts she disputes, and fails to cite any affidavits or other documents in support of her
dispute as required under Local Civil Rule 56.1(a). The Court, therefore, deems Defendants'
SUMF ¶ 30 undisputed.

the discussion."[24] (*Id.*) The Manager "listened to Arruda's side of the story and instructed Arruda as to AT&T's policies and the consequences [Arruda] might face if he engaged in [harassing] behavior." (*Id.* ¶ 33.) The Manager documented his conversation with Arruda on May 3, 2014:

> Today [the Manager and Arruda] had a discussion regarding a previous conversation [the Manager] had with [Plaintiff] where she felt uncomfortable with some comments [Arruda] made towards her. [Plaintiff] stated [Arruda] had pictures of her on [Arruda's] smart watch and [Arruda] stated [Plaintiff] was aware of them and posed for them because [Arruda] was explaining what [his] watch can do. [Plaintiff] stated [Arruda] would have conversation[s] about her on the phone when she walked in the room and [Arruda] stated [he did] this joking around because [Plaintiff] had made comments to other staff members about the fact that [Plaintiff] thinks "[Arruda] want[s] her." [Plaintiff] also stated that she witness[ed] [Arruda] watching inappropriate stuff on [his] watch and [Arruda] stated that [he] never showed her anything on [his] watch that was inappropriate but that another [RSC] asked [him] a question regarding what . . . can [be] watch[ed] on the smart watch. [The Manager and Arruda] reviewed the work place conduct . . . to ensure that [Arruda is] aware of how we should treat each other in the workplace[,] and [Arruda] understand[s] that [he] need[s] to act appropriate[ly] at all times[,] and if [he] should ever feel uncomfortable about anything [he] should contact [his] management staff.[25]

---

[24] Plaintiff denies "that [the Manager] had investigated the incident and reprimanded Arruda. Instead, [Plaintiff] state[s] the two were laughing after the meeting, no discipline was imposed, and [Arruda's] version of what occurred was accepted with little investigation." (Pl.'s Resp. to Defs.' SUMF ¶ 32.) Plaintiff further elaborates that, "[w]hile little investigation was done regarding the sexual harassment, [the Manager] began a detailed endeavor to document any deviation from policy by [Plaintiff] such as being [five] minutes late." (*Id.*) The Court, therefore, deems Defendants' SUMF ¶ 32 undisputed. *See Barker*, 2016 WL 4571388, at *1 n.1 (finding that where responsive statements "add additional facts but do not contest the asserted proposition," allegations deemed undisputed).

[25] Plaintiff "admit[s] that this was the action taken," but further elaborates that this action "involved no discipline of the offender and general acceptance of his version of events." (Pl.'s Resp. to Defs.' SUMF ¶ 33.) Plaintiff's response further states that "the conclusion that [Plaintiff] solicited pictures and comments about her body, and tolerated pornography, reflected the inherent bias of the AT&T investigation." (*Id.*) As Plaintiff does not dispute Defendants' allegation, the Court deems Defendants' SUMF ¶ 33 undisputed.

(*Id.*) After Plaintiff made her complaint on May 2, 2014, Plaintiff testified that "she and Arruda 'completely stayed away from each other.'"[26] (*Id.* ¶ 34.) In addition to Plaintiff's report to the Manager on May 2, 2014, a week later on May 9, 2014, an individual made an anonymous report on AT&T's EEO Hotline regarding the incident with Arruda. (*Id.* ¶ 35.) The anonymous caller alleged "that a male [RSC] had made inappropriate sexual comments to a female [RSC], had taken an unauthorized picture of the same female RSC and . . . accessed and showed the female RSC porn." (*Id.*) Although the Manager had previously investigated the incident with Arruda, AT&T's EEO office conducted an investigation in conjunction with Human Resources.[27] (*Id.* ¶ 36.) Over a period of one week, the EEO office interviewed several individuals about the incident with Arruda. (*Id.* ¶ 37.) Consistent with his prior report, the Manager explained to the EEO investigator that:

> [The Manager] spoke with . . . Arruda on May 3, 2014, who stated that [Plaintiff] was in the back office with other employees and [Plaintiff] commented on how her breast[s] were looking that day. According to [the] Manager . . . , Arruda stated [that] everyone commented back to her and so did [Arruda]. . . . Arruda stated that he was explaining his smart watch and that [Plaintiff] asked him to take a picture of her. [The] Manager . . . stated that . . . Arruda denied showing [Plaintiff] an inappropriate video on the sales floor . . . . [The] Manager . . . stated [that] Arruda [claimed] another employee asked if the watch can view inappropriate videos and [Arruda] replied that he believed [the watch] could. [The] Manager . . . also stated that . . . Arruda is aware that [Plaintiff] has told other employees that she feels [Arruda] wants her. [The] Manager . . . said he documented his discussion with . . . Arruda in PDTS on [May 3, 2014], and reviewed the Work Place Conduct document with [Arruda] to make sure he is aware of how to treat others in the workplace and to act appropriately at all times.

---

[26] Plaintiff qualifies this assertion, stating that Defendants' SUMF ¶ 34 "is incomplete. Multiple employees talked about her and whether she had been bagged by Arruda. While she had observed talk about other women, following the incident she became the target." (Pl.'s Resp. to Defs.' SUMF ¶ 34.)

[27] Plaintiff responds that "she was not informed of any follow-up on the AT&T investigation." (Pl.'s Resp. to Defs.' SUMF ¶ 36.) Plaintiff does not deny that Defendants' SUMF ¶ 36 is true. The Court, therefore, deems Defendants' SUMF ¶ 36 undisputed.

(*Id.*) AT&T's EEO office could not substantiate Plaintiff's accusations, yet it recommended that the store's district manager, Robert Ross, conduct "two meetings, one with [m]anagement and one with non-[m]anagement, in order to lay out expectations and re-review appropriate conduct/communications in the workplace, both by [m]anagement [and] non-[m]anagement." (*Id.* ¶ 38.) Plaintiff also testified that she had experienced one additional situation while working at AT&T, which involved the Assistant Manager contacting her on a dating website; however, Plaintiff admitted that she never complained to anyone about that incident and the incident did not reoccur.[28] (*Id.* ¶ 39.)

### 5. Events After Plaintiff's Complaint to Management

Plaintiff attended work only three times after her complaint to the Manager on May 2, 2014.[29] (*Id.* ¶ 42.) Specifically, from May 3 to May 19, 2014 (the date Plaintiff was terminated), Plaintiff's attendance record was as follows:

| | |
|---|---|
| 5/3/2014 | Worked[30] |
| 5/4/2014 | Unexcused Absence |
| 5/5/2014 | Not Scheduled |

---

[28] Plaintiff appears to not respond to Defendants' SUMF ¶ 37, ¶ 38, and ¶ 39. The Court, however, deems Plaintiff's Response ¶ 36 as a response to Defendants' SUMF ¶ 37, ¶ 38, ¶ 39, and ¶ 40. Accordingly, Plaintiff responds that "the statement does not reference the first complaint to [the Assistant Manager]. Additionally[,] management was aware of repeated violations of the company's sexual harassment policies with the [Manager] and [the Assistant Manager] having observed violations. They would not need to be notified about what they already knew." (Pl.'s Resp. to Defs.' SUMF ¶¶ 37-40.) Nonetheless, Plaintiff does not appear to dispute Defendants' allegations, and the Court, therefore, deems Defendants' SUMF ¶ 37, ¶ 38, ¶ 39, and ¶ 40 undisputed.

[29] Defendants' SUMF ¶ 42 incorrectly states that Plaintiff worked only two times after her complaint on May 2, 2014. Plaintiff's time card, however, demonstrates that she worked three times. (Johannessen Decl., Ex. I, at ATT0155.)

[30] Defendants' SUMF ¶ 42 incorrectly states that Plaintiff was not scheduled to work on May 3, 2014, but Plaintiff's timecard demonstrates that Plaintiff did in fact work that day. (*Id.*)

| 5/6/2014 | 31-120 minutes tardy |
| 5/7/2014 | Unexcused Absence |
| 5/8/2014 | Unexcused Absence |
| 5/9/2014 | Not Scheduled |
| 5/10/2014 | 16-30 minutes tardy |
| 5/11/2014 | Unexcused Absence |
| 5/12/2014 | Not Scheduled |
| 5/13/2014 | Punched in for 5 minutes |
| 5/14/2014 | Unexcused Absence |
| 5/15/2015 | Not Scheduled |
| 5/16/2014 | Unexcused Absence |
| 5/17/2014 | Unexcused Absence |
| 5/18/2014 | Unexcused Absence |
| 5/19/2014 | Employment terminated[31] |

(*Id.*) Plaintiff claims that she did not attend work because she was "uncomfortable working in that environment." (*Id.* ¶ 43; Pl.'s Dep. 184:2-5.) Plaintiff, however, testified that she did not complain to anyone about her discomfort.[32] (Defs.' SUMF ¶ 43; Pl.'s Dep. 184:6-23.) In addition, Plaintiff had no contact with Arruda on the three days that she did go to work after her complaint. (Defs.' SUMF ¶ 49.)

On May 6, 2014, the Manager and the Assistant Manager met with Plaintiff to discuss Plaintiff's sales goals, as part of her ongoing Counseling Notice action plan from April 21, 2014. (Defs.' SUMF ¶ 45; Pl.'s Dep. 204:2-205:8.) On May 13, 2014, Plaintiff "came into work before

---

[31] Plaintiff states that she "has disputed limited amounts of the chronology of her work and particularly notes that attendance only became a problem after the sexual harassment complaint." (Pl.'s Resp. to Defs.' SUMF ¶ 42.) Plaintiff does not deny that Defendants' SUMF ¶ 42 is true. The Court, therefore, deems Defendants' SUMF ¶ 42 undisputed.

[32] Plaintiff concedes that "the deposition excerpts are correct." Plaintiff, however, further elaborates that "[the Assistant Manager and the Manager] observed violations of the company policies on a regular basis, and took no action after receiving [Plaintiff's] complaint. Management was fully aware of the environment but had determined to do nothing and [Plaintiff] was absent [sic] that company policies were being violated, she was highly uncomfortable in the environment, but nothing could be done about that." (Pl.'s Resp. to Defs.' SUMF ¶ 43.) As Plaintiff does not dispute Defendants' allegation, the Court, therefore, deems Defendants' SUMF ¶ 43 undisputed.

14

her scheduled shift, not wearing her uniform, and indicat[ed] that she was turning in her company phone."[33] (Defs.' SUMF ¶ 46.) Witnesses explained that Plaintiff "stated that she was coming in to get fired and was waiting to be told as such officially."[34] (*Id.* ¶ 47.) On that day, Plaintiff came into the store for a few minutes and then "called out" of work. (*Id.* ¶ 48.) Plaintiff "was then issued a final written warning based on her continued unexcused absences from work."[35] (*Id.*) Thereafter, Plaintiff accrued four additional, consecutive unexcused absences. (*Id.* ¶ 50.) The Manager and AT&T management subsequently terminated Plaintiff's employment on May 19, 2014.[36] (*Id.*)

---

[33] Plaintiff's response states: "The statement of her attire is not disputed." (Pl.'s Resp. to Defs.' SUMF ¶ 46.) Plaintiff does not deny that the remainder of Defendants' SUMF ¶ 46 is true. The Court, therefore, deems Defendants' SUMF ¶ 46 undisputed.

[34] Plaintiff's response states: "Disputed by the statement of the co-worker." (Pl.'s Resp. to Defs.' SUMF ¶ 47.) As there is no record citation, the Court assumes that Plaintiff is referring to the Atchison and Mercado statements. (ECF Nos. 26-5, 26-6.) These two statements, however, are unsworn statements. The Court, therefore, declines to consider these statements for the purpose of this Motion, and deems Defendants' SUMF ¶ 47 undisputed. *See Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005) (upholding district court's refusal to consider unsworn statement in determining motion for summary judgment, reasoning that "since the statement was not in affidavit form, it was not sufficient . . . to rely upon").

[35] Plaintiff's response states: "Disputed. Having had [the Assistant Manager] and [the Manager] tell [Plaintiff] that she should quit after she made the complaint of violation of the company's sexual harassment policy, they were happy this had occurred." (Pl.'s Resp. to Defs.' SUMF ¶ 48.) Plaintiff does not deny that AT&T's SUMF ¶ 48 is true, but rather addresses management's alleged motive regarding the matter. The Court, therefore, deems Defendants' SUMF ¶ 48 undisputed. To the extent this allegation constitutes a legal conclusion for the purposes of evaluating Plaintiff's retaliation claim, the Court does not accept the allegation as true and reserves evaluation for the Discussion section below.

[36] Plaintiff's response states: "Denied. Again, [the Assistant Manager] and [the Manager] sought [Plaintiff's] dismissal following her complaint of sexual harassment and unsuccessful attempt to enforce company policy, and the discussion of attendance really had little to do with what occurred." (Pl.'s Resp. to Defs.' SUMF ¶ 50.) Plaintiff, however does not deny that she was terminated on May 19, 2014. (Pl.'s Dep. 72:19-22.)

## B.  Disputed Facts[37]

It is disputed whether Plaintiff directly reported to the Manager, or whether Plaintiff directly reported to the Assistant Manager. (Defs.' SUMF ¶ 5; Pl.'s Resp. to Defs.' SUMF ¶ 5.) It is further disputed whether, with and without Arruda's participation, "[d]iscussion of sexual activities occurred on a regular basis at the AT&T facility." (Pl.'s CSF ¶¶ 8-9, 12; Defs.' Resp. to Pl.'s CSF ¶¶ 8-9, 12.) In addition, the parties dispute whether the Assistant Manager would discuss "getting with women on social networking sites, [and] how he slept with them and customers." (Pl.'s CSF ¶¶ 10-11; Defs.' Resp. to Pl.'s CSF ¶¶ 10-11.) It is also disputed whether "sexual comments or innuendos occurred on a daily basis at AT&T." (Pl.'s CSF ¶ 12; Defs.' Resp. to Pl.'s CSF ¶ 12.)  Specifically with respect to Arruda, it is disputed whether Arruda showed Plaintiff pornography.  (Pl.'s CSF ¶ 20; Defs.' Resp. to Pl.'s CSF ¶ 20.)

## II.  <u>Legal Standard</u>

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over

---

[37] Upon review of the parties' submissions, the Court finds that only the following limited allegations are disputed between the parties.  The lack of disputed facts is largely attributable to Plaintiff's failure to adhere to Local Civil Rule 56.1(a). Plaintiff's responses to Defendants' SUMF contain no citations to the record as required under the Local Civil Rules. *See* L.Civ.R. 56.1(a) ("The opponent of summary judgment *shall* furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*.") (emphasis added). Plaintiff's CSF is also severely deficient because: (1) Plaintiff fails to cite to the record with respect to numerous allegations; and (2) where Plaintiff cites to the record, the citations are largely deficient because Plaintiff did not submit the cited excerpts to relevant deposition transcripts or otherwise relied entirely on a conclusory, self-serving certification. *See Marrin v. Cap. Health Sys. Inc.*, No. 14-2558, 2017 WL 2369910, at *17 (D.N.J. May 31, 2017) ("[A plaintiff's] conclusory, self-serving [certifications] are insufficient to withstand a motion for summary judgment.").

16

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250).

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 447 U.S. at 250. If the non-moving party fails to:

> make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . . there can be "no genuine [dispute] of material fact," [because] a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "Thus, if a reasonable fact finder could find in the non-movant's favor, then summary judgment may not be granted." *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

## III.     Discussion

### A.     Hostile Work Environment under Title VII and NJLAD (Count One)

Count One of Plaintiff's Complaint alleges hostile work environment sexual harassment under both Title VII and the New Jersey Law Against Discrimination ("NJLAD"). Because "[t]he

elements of [NJLAD] closely resemble the first four elements of [a] Title VII hostile work environment claim," the Court's analysis is applicable to both. *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).

In order to hold an employer liable under a Title VII hostile work environment claim, Plaintiff must demonstrate that: "(1) [she] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999), *cert. denied*, 528 U.S. 964 (1999) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990). Similarly, in order to prevail under NJLAD, Plaintiff must demonstrate that the alleged harassing conduct "(1) would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*." *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993).

Under both Title VII and the NJLAD, "where a plaintiff seeks to hold her employer liable for a hostile work environment created by co-workers, she must show that the employer knew or should have known of the harassment . . . and failed to take prompt remedial action." *Reynolds v. Atl. City Convention Ctr. Auth.*, No. 88-4232, 1990 WL 267417, at *16 (D.N.J. May 26, 1990), *aff'd*, 925 F.2d 419 (3d Cir. 1991). "[A] [p]laintiff can demonstrate knowledge by the employer by showing that she complained to management of harassment." *Id.* Prompt remedial action is action that is "reasonably calculated to prevent further harassment." *Boneberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir. 1997). Here, Defendants seek summary judgment on three grounds: (1) the alleged harassment was not sufficiently "severe" or "pervasive"; (2) AT&T took prompt remedial

action in response to Plaintiff's complaint; and (3) Plaintiff failed to take advantage of corrective opportunities. (Defs.' Moving Br. 14-24, ECF No. 23-7.) Here, the Court finds that the alleged harassment was not sufficiently severe or pervasive.

"Under both Title VII and NJLAD, a hostile environment claim requires proof of pervasive or severe intentional discrimination that affected the plaintiff and would also affect a reasonable person." *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 (3d Cir. 1994); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). In deciding whether harassment was sufficiently severe or pervasive to create a hostile work environment, no single factor is dispositive: the totality of the circumstances is considered. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The circumstances to be weighed are: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Furthermore, the discriminatory conduct "must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (holding that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'"). Consequently, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citation omitted).

Here, Plaintiff: (1) failed to cite to the record as required under Local Civil Rule 56.1(a); (2) failed to attach the relevant supporting documents, such as pertinent pages from deposition transcripts; and (3) relied on a conclusory self-serving certification as opposed to documents

obtained in discovery.[38] (*See generally* Pl.'s Resp. to Defs.' SUMF; Pl.'s CSF.) Accordingly, the

totality of the few allegations Plaintiff adequately alleged on summary judgment amount to mere

workplace difficulties or ordinary tribulations of the workplace. *See Faragher*, 524 U.S. at 788

(holding that "ordinary tribulations of the workplace, such as the sporadic use of abusive language,

gender-related jokes, and occasional teasing" are insufficient to show a hostile work environment).

These allegations include "[d]iscussion of sexual activities . . . on a regular basis at the AT&T

facility,"[39] including discussions of "getting with women on social networking sites, [and sleeping]

with them and customers,"[40] "sexual comments or innuendos,"[41] and an isolated incident of a

coworker showing Plaintiff pornography.[42] "[T]he purview of Title VII[,] [however,] does not

extend to all workplace difficulties, even where the conduct at issue may be crass and

unwarranted." *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 266 (E.D. Pa. Nov. 18, 2015), *aff'd*, No.

---

[38] Plaintiff's certification is devoid of details. The certification primarily consists of general allegations as to comments made without identifying any specific instances, specific individuals, specific dates, or any context surrounding the alleged events. (*See generally* Ballard Cert., ECF No. 27.) The few factual allegations containing a minimal level of detail include: the Assistant Manager's comments about women's physical attributes and telling Plaintiff that Arruda "liked black women" (*id.* ¶¶ 11, 17); the Assistant Manager contacting Plaintiff on a dating site and commenting on Plaintiff's pictures, although the certification omits description of the actual comments (*id.* ¶ 12); isolated incidents of Arruda taking pictures of Plaintiff's chest and buttocks in her work uniform and showing her pornography (*id.* ¶ 13); Arruda telling Plaintiff what he wanted to do to her, although the certification omits description of Arruda's actual comments (*id.*); and the Assistant Manager telling Plaintiff to "leave" because she did not "fit in," although the certification omits any description of the context with respect to these alleged comments (*id.* ¶ 19). Even when considering these facts in the light most favorable to Plaintiff, the Court finds that they do not constitute sufficient severity or pervasiveness to survive summary judgment.

[39] (Pl.'s CSF ¶¶ 8-9, 12; Defs.' Resp. to Pl.'s CSF ¶¶ 8-9, 12.)

[40] (Pl.'s CSF ¶¶ 10-11; Defs.' Resp. to Pl.'s CSF ¶¶ 10-11.)

[41] (Pl.'s CSF ¶ 12; Defs.' Resp. to Pl.'s CSF ¶ 12.)

[42] (Pl.'s CSF ¶ 20; Defs.' Resp. to Pl.'s CSF ¶ 20.)

15-3686, 2016 WL 4177212 (3d Cir. Aug. 8, 2016). Accordingly, Defendants' renewed Motion for Summary Judgment is granted with respect to Count One.

**B.    Constructive Discharge and Retaliation (Count Two)**

1.    Constructive Discharge

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan,* 136 S. Ct. 1769, 1776 (2016). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Id.* at 1776-77. Accordingly, a constructive discharge claim has two basic elements: (1) "[a] plaintiff must prove . . . that [she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to *resign*"; and (2) "[she] must also show that [she] *actually resigned.*" *Id.* at 1777 (emphasis added). Here, Plaintiff admits that she did not resign, quit, voluntarily leave, or any such equivalent. Rather, Plaintiff testified that the Manager fired her.[43] (Pl.'s Dep. 72:19-22.) Accordingly, Plaintiff cannot establish her constructive discharge claim because she cannot "show that [she] actually resigned." *Green*, 136 S. Ct at 1777.

Additionally, "[t]here are subtle but discernible differences between the standard for a hostile work environment and the standard for constructive discharge." *Pikowski v. GameStop, Inc.*, No. 11-2732, 2013 WL 6498072, at *13 (D.N.J. Dec. 11, 2013). "[A] hostile work environment claim requires 'severe or pervasive' conduct that objectively 'alters the conditions of

---

[43] Although Plaintiff's Opposition Brief argues in conclusory fashion that "there is sufficient evidence of a hostile work environment . . . and that was the proximate cause of [P]laintiff's *resignation,*" (Pl.'s Opp'n Br. 27 (emphasis added)), Plaintiff concedes that she did not resign, but was rather fired (Pl.'s Dep. 72:19-22).

employment' and is 'hostile or abusive.'" *Id.* "In contrast, constructive discharge requires not merely 'severe or pervasive' conduct, but 'conduct that is so intolerable that a reasonable person would be forced to *resign* rather than continue to endure it.'" *Id.* (emphasis added). "Simply put, a constructive discharge claim requires more egregious conduct than that sufficient for a hostile work environment claim." *Id.* Here, as the Court determined that the alleged conduct was neither sufficiently severe nor pervasive with respect to Plaintiff's hostile work environment claim, Plaintiff's constructive discharge claim is also similarly deficient on summary judgment.

The Court, therefore, grants Defendants' Motion for Summary Judgment with respect to Plaintiff's constructive discharge claim under Count Two.

### 2. Retaliation

To establish a *prima facie* case of retaliation under Title VII and NJLAD, a plaintiff must prove: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006); *Jamison v. Rockaway Twp. Bd. of Educ.*, 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990). The Third Circuit has held that the adverse employment action "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Tourtellotte*, 636 F. App'x at 852 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). In its analysis of such adverse employment action, the Third Circuit utilizes an objective standard: whether "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

"In assessing whether there is a causal connection, [the Third] Circuit has focused on the temporal proximity of the protected activity and the adverse employment action, as well as whether or not there is a pattern of antagonism." *Tourtellotte*, 636 F. App'x at 852 (citing *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 53).

Assuming the plaintiff can establish a *prima facie* case of retaliation, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct." *Moore*, 461 F.3d at 342. If the employer can do that, the burden shifts to the plaintiff to "produce some evidence from which a jury could reasonably reach the[] conclusion[] . . . that [(1)] the employer's proffered explanation was false, and [(2)] that retaliation was the real reason for the adverse employment action." *Id.*

Here, Plaintiff satisfies the first and second elements of her *prima facie* retaliation claim. With respect to the first element, Plaintiff's complaint of harassment to management on May 2, 2014 constituted protected activity under Title VII. With respect to the second element, Plaintiff's termination on May 19, 2014 constituted adverse employment action taken against her. Plaintiff, however, fails to satisfy the third element of her *prima facie* retaliation claim, as she does not demonstrate that "there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41. Indeed, Defendants provide sufficient evidence to support their contention that Plaintiff was terminated on May 19, 2014 due to her attendance issues following her complaint on May 2, 2014.

Although Plaintiff's termination was only seventeen days after she made her complaint, in that time frame she was scheduled to work twelve separate shifts, but only appeared for three of those twelve shifts, and appeared late for two of the three. (Johannessen Decl., Ex. I, at ATT0155.)

23

Plaintiff claims that she did not attend work because she was "uncomfortable working in [the] environment." (Defs.' SUMF ¶ 43; Pl.'s Dep. 184:2-5.) Plaintiff, however, testified that she "kept [her discomfort] to [her]self." (Pl.'s Dep. 184:6-8.) Plaintiff admits she did not notify AT&T's Human Resources department, legal department, compliance department, anonymous hotline, or any other available resource about her discomfort. (*Id.* 184:9-23.)

Furthermore, on May 6 and May 13, 2014, Plaintiff was issued two written warnings about her attendance issues prior to being terminated. (Johannessen Decl., Ex. L, at ATT0058.) On May 6, 2014, the Manager and the Assistant Manager met with Plaintiff to discuss her sales goals, as part of her ongoing Counseling Notice action plan from April 21, 2014. (Defs.' SUMF ¶ 45; Pl.'s Dep. 204:2-205:8.) Plaintiff testified that she was "aware that [AT&T] still expected [her] to make sales and build value interactions with customers." (Pl.'s Dep. 204:17-20.) Plaintiff, however, accrued two more unexcused absences on May 7 and May 8, 2014. (Johannessen Decl., Ex. I, at ATT0155.) Plaintiff returned to work on May 10, 2014, but then accrued another unexcused absence on May 11, 2014. (*Id.*)

On May 13, 2014, Plaintiff "came into work before her scheduled shift, not wearing her uniform, and indicat[ed] that she was turning in her company phone." (Defs.' SUMF ¶ 46.) On that day, Plaintiff clocked in for five minutes and did not work. (*Id.* ¶ 48; Johannessen Decl., Ex. I, at ATT0155.) Plaintiff "was then issued a final written warning based on her continued unexcused absences from work." (*Id.*) After receiving this final written warning on May 13, 2014, Plaintiff accrued four more, consecutive unexcused absences on May 14, May 16, May 17, and May 18, 2014. (Johannessen Decl., Ex. I at ATT0155.) Accordingly, Defendants terminated Plaintiff's employment due to her attendance issues. (Defs.' SUMF ¶ 50.) The Court, therefore, finds that Plaintiff has not demonstrated that "there was a causal connection between her

participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41.

In the alternative, even if Plaintiff had established a *prima facie* case of retaliation, the evidence of record does not support a finding that Defendants' legitimate, non-discriminatory reason for its adverse actions were pretext for retaliation. *See Garnett v. Bank of Am.*, No. 14-921, 2017 WL 1074358, at *11 (D. Del. Mar. 21, 2017) (granting summary judgment where plaintiff "received multiple warnings . . . regarding her job performance and what was expected from her to meet performance expectations in her position . . . [and] was warned of the consequences should her performance fail to improve, yet she failed to improve and, ultimately, her employment was terminated"). Defendants' proffered reason for terminating Plaintiff's employment is "not weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence." *Id.* "[A]t the summary judgment stage the burden shifts to [Plaintiff] to come forward with sufficient evidence for a reasonable juror to find that [Defendants'] plausible rationales are mere pretext." *Stucke v. City of Phila.*, No. 15-2303, 2017 WL 1363874, at *4 (3d Cir. Apr. 12, 2017). Plaintiff has failed to do so. Accordingly, the Court concludes that no reasonable jury could find that Plaintiff has established a claim of retaliation. The Court, therefore, grants Defendants' Motion for Summary Judgment with respect to Plaintiff's retaliation claim under Count Two.

## IV. Conclusion

For the reasons set forth above, Defendants' Renewed Motion for Summary Judgment is GRANTED. An Order consistent with this Memorandum Opinion will be entered.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 25th, 2017